UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM R. ST. CLAIR,

               Plaintiff,

   v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

               Defendant.

Case No. 3:16-cv-05841-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

William R. St. Clair has brought this matter for judicial review of defendant's denial of his application for supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Local Rule MJR 13. For the reasons set forth below, the Court affirms the Commissioner's decision denying benefits.

## FACTUAL AND PROCEDURAL HISTORY

On October 13, 2009, Mr. St. Clair filed an application for SSI benefits, alleging that he became disabled beginning that day. Dkt. 9, Administrative Record (AR) 454. That application was denied on initial administrative review, on reconsideration, and after a hearing before an administrative law judge (ALJ). *Id.* On October 23, 2014, this Court reversed the ALJ's decision and remanded for further proceedings. *Id.* On December 3, 2015, another hearing was held before the ALJ. AR 488-523. Mr. St. Clair appeared and testified, as did his father, Floyd Lee St. Clair, and a vocational expert. *Id.*

In a written decision on February 4, 2016, the ALJ found that Mr. St. Clair could perform his past relevant work as a floor waxer—as well as jobs that exist in significant numbers in the national economy—and therefore was not disabled. AR 480-81. The Appeals Council denied Mr. St. Clair's request for review on July 29, 2016, making the ALJ's decision the final decision of the Commissioner. AR 437. Mr. St. Clair appealed that decision in a complaint filed with this Court on October 5, 2016. Dkt. 3; 20 C.F.R. § 416.1481.

Mr. St. Clair seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred:

(1) in evaluating the medical evidence;

(2) in evaluating Mr. St. Clair's testimony;

(3) in evaluating the lay witness evidence; and

(4) consequently, in assessing Mr. St. Clair's residual functional capacity and in finding Mr. St. Clair could perform his past relevant work and other jobs existing in significant numbers in the national economy.

For the reasons set forth below, the Court affirms the decision to deny benefits.

## DISCUSSION

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id*. At issue here is the ALJ's weighing of different pieces of medical evidence, his evaluation of Mr. St. Clair and his father's testimony, and the ALJ's resulting assessment of Mr. St. Clair's RFC and conclusion that Mr. St. Clair's alleged disabilities do not prevent him from working.

This Court affirms an ALJ's determination that a claimant is not disabled if the ALJ applied "proper legal standards" in weighing the evidence and making the determination and if "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 862 F.3d 987, 996 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

This Court will thus uphold the ALJ's findings if "inferences reasonably drawn from the record" support them. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If more than one rational interpretation can be drawn from the evidence, then this Court must uphold the ALJ's interpretation. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

I. <u>The ALJ's Evaluation of the Medical and Other Opinion Evidence</u>

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "'questions of credibility and resolution of conflicts are functions solely of the [ALJ]'" and this Court will uphold those conclusions. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971)); *Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 601 (9th Cir. 1999). As part of this discretion, the ALJ determines whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant" in deciding how to weigh medical opinions. *Morgan*, 169 F.3d at 603.

The ALJ must support his or her findings with "specific, cogent reasons." *Reddick*, 157 F.3d at 725. To do so, the ALJ sets out "a detailed and thorough summary of the facts and

conflicting clinical evidence," interprets that evidence, and makes findings. *Id.* The ALJ does not need to discuss all the evidence the parties present but must explain the rejection of "significant probative evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). The ALJ may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. And the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

In general, the ALJ gives more weight to a treating physician's opinion than to the opinions of physicians who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Nonetheless, an ALJ need not accept a treating physician's opinion that "is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

To reject the uncontradicted opinion of either a treating or examining physician, an ALJ must provide "clear and convincing" reasons. *Trevizo*, 862 F.3d at 997. When other evidence contradicts the treating or examining physician's opinion, the ALJ must still provide "specific and legitimate reasons," supported by substantial evidence, to reject that opinion. *Id.* An ALJ should weigh the physician's opinion according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Id.*; *see* 20 C.F.R. § 416.927(c)(1)-(6). Finally, a non-examining physician's opinion may constitute substantial evidence for an ALJ's findings if that opinion "is consistent with other independent evidence in the record." *Tonapetyan*, 242 F.3d at 1149.

### A. Treating Physician: Dr. Chesnut

Dr. Randal Chesnut evaluated Mr. St. Clair in October 2009, two weeks after Mr. St. Clair suffered a self-inflicted gunshot wound. AR 157-58. Dr. Chesnut diagnosed Mr. St. Clair with "cognitive disorder NOS, due to injury, delirium[;] alcohol dependence; [and] substance induced mood [disorder]." AR 157. Dr. Chesnut found that Mr. St. Clair's exertional level was severely limited and his condition made him unable to work. AR 158. In particular, Dr. Chesnut found that Mr. St. Clair was limited by general weakness and needed help with any mobility. *Id.* Dr. Chesnut indicated he did not know how long Mr. St. Clair would be unable to work. *Id.*

The ALJ gave "little weight" to Dr. Chesnut's opinion, explaining that the limitations Dr. Chesnut assessed did not persist for twelve months or more and observing that Mr. St. Clair's "records show no problem with mobility after discharge and demonstrate intact cognition within only two months of the incident." AR 471; *see* AR 329.

Mr. St. Clair does not contest the ALJ's finding that the limitations Dr. Chesnut described did not persist for long after his evaluation, contending only that Mr. St. Clair's improvement "is not a legitimate reason to reject Dr. Chesnut's opinion about how Mr. St. Clair was doing at that time." Dkt. 13, p. 4. Mr. St. Clair is incorrect. To be found disabled, a plaintiff must establish that she is unable to "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Since the ALJ properly found that the limitations Dr. Chesnut assessed lasted well under 12 months, the ALJ gave specific and legitimate reasons to accord Dr. Chesnut's opinions little weight.

B. <u>Examining Physicians: Dr. Van Dam and Dr. Parker</u>

Dr. Carla Van Dam evaluated Mr. St. Clair in January 2010. AR 348. She diagnosed him with cognitive disorder due to a traumatic brain injury, alcohol dependence, depressive disorder, and "Presumed Personality Disorder." *Id.* She found, however, that Mr. St. Clair had "adequate cognitive abilities to manage a number of tasks, but would continue to suffer from an underlying attitude that presumably interferes with his ability to pursue any such activities." AR 347. She also noted that "given some structure [Mr. St. Clair] could engage in more meaningful activities than might currently be the case." AR 347-48. She noted that Mr. St. Clair's "underlying attitude" "appear[ed] to have been a pre-existing condition but would presumably be exacerbated by his injury." AR 348. She assessed Mr. St. Clair at 50 on the global assessment of functioning (GAF). *Id.*

The ALJ gave "little weight" to Dr. Van Dam's opinion that Mr. St. Clair needs structure to engage in activities and to the GAF score she assessed. AR 473. The ALJ offered several explanations, including: That the unremarkable findings from Mr. St. Clair's other mental status exams indicated he could stay on task and had the cognitive ability to manage multiple tasks, *see* AR 329, 345-346, 457-480; that the record indicated Mr. St. Clair was unwilling to work before his injury and did not indicate that his continued unwillingness was related to his impairments, *see* AR 169, 336-37, 344; and that Mr. St. Clair did not seek treatment for his mental impairments or headaches (though he reported that marijuana helps his headaches and back pain, *see* AR 706-07, 755, 807).

Dr. James Parker evaluated Mr. St. Clair in June 2010. AR 377. He observed that Mr. St. Clair had a restricted and irritable affect and diminished hygiene, but was "reasonably cooperative." AR 378. Dr. Parker diagnosed Mr. St. Clair with cognitive disorder due to traumatic brain injury. AR 379. He opined that Mr. St. Clair could "do simple repetitive tasks

with reasonable accuracy," though Mr. St. Clair "might have difficulty sustaining this." *Id.* He noted Mr. St. Clair's irritability and suggested he "seems to express his problems with authority figures," which "would be a problem in the workplace." *Id.*

The ALJ gave "significant weight" to Dr. Parker's opinion that Mr. St. Clair could perform simple, repetitive tasks with reasonable accuracy, noting that this opinion was consistent with Dr. Parker's examination and other mental status examinations and cognitive testing in the record. AR 474; *see* AR 329, 345-346, 457-480. But as with Dr. Van Dam's opinion, the ALJ gave "little weight" to Dr. Parker's statement that Mr. St. Clair "might have" difficulty sustaining tasks and to Dr. Parker's opinion that Mr. St. Clair would have problems with irritability in the workplace. AR 474. The ALJ noted that Dr. Parker's statement about difficulty sustaining tasks was equivocal, as the ALJ indicated that Mr. St. Clair should undergo further testing. AR 474. The ALJ also found, based on his review of mental status exams and Mr. St. Clair's reported activities, that Mr. St. Clair can "sustain simple, repetitive tasks." AR 474; *see* AR 345-46, 378-79, 419, 421-22, 668, 808.

In arguing that the ALJ erred in evaluating Dr. Van Dam and Dr. Parker's opinions, Mr. St. Clair asserts only that "[t]he ALJ repeated his error of failing to fully accept" those opinions, "in violation of the law of the case doctrine." Dkt. 13, p. 6. Mr. St. Clair does not elaborate on this bare assertion and has thus waived his challenges to the ALJ's evaluation of Dr. Van Dam and Dr. Parker's opinions. *See Carmickle*, 533 F.3d at 1161 n.2.

Moreover, the law of the case doctrine would not invalidate the ALJ's respective discussions of Dr. Van Dam and Dr. Parker's opinions. That doctrine does apply in social security cases, "generally prohibit[ing] a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Stacy v. Colvin*, 825 F.3d 563,

567 (9th Cir. 2016). In remanding the 2012 ALJ decision, however, this Court did not decide the weight the ALJ should give Dr. Van Dam or Dr. Parker's opinions. In fact, this Court did the opposite, instructing that "[t]hese opinions should be evaluated anew" on remand. AR 564. That is what the ALJ did here. Mr. St. Clair fails to offer any reason the ALJ's new evaluations were invalid. Dkt. 13, pp. 6-7.

        C.        <u>Examining Physician: Dr. Wheeler</u>

Dr. Kimberly Wheeler evaluated Mr. St. Clair in July 2012. She observed that Mr. St. Clair had a blunted affect and impaired thought process and content, orientation, perception, concentration, insight, and judgment. AR 811. She diagnosed Mr. St. Clair with "[d]ementia due to [gunshot wound] head trauma," generalized anxiety, alcohol and cannabis dependence (the latter ongoing), and "[p]ersonality change due to [gunshot wound] head trauma." AR 809. Dr. Wheeler opined that Mr. St. Clair was severely impaired in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, adapt to changes in a routine work setting, communicate and perform effectively in a work setting, and complete a normal workday and workweek without interruptions from psychologically based symptoms. AR 809-10. She also opined that Mr. St. Clair was markedly impaired in his ability to learn new tasks, perform routine tasks without special supervision, maintain appropriate behavior in a work setting, and set realistic goals and plan independently. *Id.* She assessed Mr. St. Clair at 38 on the GAF. AR 809.

The ALJ gave "little weight" to Dr. Wheeler's opinions, finding that "[t]he longitudinal record does not demonstrate the degree of difficulty Dr. Wheeler described in her opinion." AR 475.

Mr. St. Clair contends that substantial evidence does not support the ALJ's reasoning because "Dr. Wheeler described many significant clinical findings which support her opinion."

ORDER - 8

Dkt. 13, p. 8. He also contends that "the fact that some other testing was normal does not invalidate Dr. Wheeler's opinion, which was based on her clinical findings." Dkt. 13, p. 8.

The ALJ gave specific and legitimate reasons to reject Dr. Wheeler's opinion, and substantial evidence supports them. The ALJ cited a number of objective tests that yielded unremarkable results that contrast with those Dr. Wheeler observed. *See* AR 329, 345-46, 379, 419, 421-22. In contrast with Dr. Wheeler, those evaluators found that Mr. St. Clair had cognitive abilities "in the normal range," AR 329, "demonstrated good attention and concentration skills," "appeared able to do abstract reasoning," and demonstrated "reasonably good" memory, AR 345-46, 379. *See also* 419, 421-22 (unremarkable mental status). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts is the ALJ's responsibility. *Morgan*, 169 F.3d at 603.

The ALJ also found Mr. St. Clair "not fully credible" and discredited his performance in his examination with Dr. Wheeler in the context of being evaluated for benefits because, the ALJ found, Mr. St. Clair had shown the "ability to perform many of the tasks he . . . displayed difficulty with during Dr. Wheeler's examination." AR 475. As discussed below, the record supports the ALJ's credibility finding.

For the same reasons that he discounted Dr. Wheeler's opinion, the ALJ gave "little weight" to reviewing physician Dr. Luci Carstens's opinion, which appeared to simply repeat Dr. Wheeler's conclusions. *See* AR 816. The ALJ did not err in doing so, for the reasons discussed above with respect to Dr. Wheeler's opinion.

      D.        <u>Other Medical Source: Mr. Wilson</u>

In March 2010, Bill Wilson, MA, MHP, assessed Mr. St. Clair with a GAF of 30. AR 406. He observed that Mr. St. Clair's appearance was unkempt, his eye contact was poor, his

psychomotor activity was retarded, his speech was slow and quiet, his affect and mood were anxious, and his thought content was depressive. AR 404. Mr. Wilson evaluated Mr. St. Clair again in September 2010, rating his GAF at 45 and observing that he was "[p]ossibly unemployable." AR 397.

The ALJ gave "little weight" to Mr. Wilson's opinions, including the GAF scores. AR 476. He pointed again to Mr. St. Clair's unremarkable mental status examinations. *See* AR 419, 421-22. He found that Mr. St. Clair's "hostility exhibits when someone questions his substance use," AR 336, 400, 426-27. And he cited contradicting findings from the CDIU report indicating that Mr. St. Clair can interact with authority figures (in that case, the investigator himself) and displayed a normal affect. AR 668, 676. The ALJ further reasoned with respect to the GAF scores that Mr. St. Clair's "presentation to Mr. Wilson is not consistent with his presentation elsewhere in the record," again pointing to unremarkable mental status examinations. AR 476.

As with Dr. Van Dam and Dr. Parker, Mr. St. Clair fails to articulate a specific argument regarding the ALJ's discussion of Mr. Wilson's opinions, instead stating only that the ALJ "repeated his errors from his previous decision and violated the law of the case doctrine." Dkt. 13, p. 7. As with the opinions of Dr. Van Dam and Dr. Parker, this Court instructed the ALJ on remand to "consider anew the opinions of Mr. Wilson." AR 565. Thus, for the same reasons explained above, the ALJ's discussion of Mr. Wilson's opinion did not violate the law of the case doctrine. Moreover, the ALJ gave the germane and supported reasons noted above to reject Mr. Wilson's opinions regarding Mr. St. Clair's limitations. AR 476.

E. Reviewing Physicians

Mr. St. Clair also challenges the ALJ's treatment of opinions of three physicians who did not treat or examine him but reviewed his records. Again, the Court finds no error in the ALJ's reasoning.

Mr. St. Clair points to Dr. Thomas Clifford's opinions that Mr. St. Clair was "likely to have some problems with punctuality," would have "occasional lapses of pace," and "can work independently after a period of accommodation." AR 366; Dkt. 13, p. 8. Mr. St. Clair argues only that "[t]he ALJ did not state any legitimate reason for refusing to fully accept these limitations." AR 472-73.

Mr. St. Clair's conclusory statement is not specific enough to raise a challenge to the ALJ's decision regarding Dr. Clifford's opinion. *See* Carmickle, 533 F.3d at 1161 n.2. Moreover, any error with respect to Dr. Thomas Clifford's opinion would be harmless, because the ALJ did not disregard the only functional limitations that Mr. St. Clair points to—that Mr. St. Clair would have "occasional lapses of pace" (though he could "sustain concentration for two-hour intervals over an 8-hr day"), was "likely to have some problems with punctuality" ("but not so as to preclude productive activity in a competitive employment situation"), and "can work independently." AR 366. Rather, to the modest extent that Dr. Clifford suggested Mr. St. Clair was limited, the ALJ incorporated it in Mr. St. Clair's RFC. *See* AR 459 ("The claimant is capable of simple, routine, repetitive tasks consisting of 1-2 steps. He is able to interact occasionally with coworkers and supervisors but should have no public interaction.").

For the same reasons, the ALJ did not err in discussing Dr. Eather's opinion, which simply affirmed Dr. Clifford's. *See* AR 376.

Finally, Mr. St. Clair challenges the ALJ's decision to accord "significant weight" to the opinion of reviewing physician Dr. John Robinson.[1] Dr. Robinson opined that Mr. St. Clair "is capable of performing [simple, repetitive tasks] involving 1-2 steps. No public contact." AR 716. Mr. St. Clair contends that this opinion was inconsistent with Dr. Wheeler's and that Dr.

---

[1] The ALJ mistakenly referred to Dr. Robinson as "Dr. Robbins." *See* AR 476.

Robinson gave little explanation of his bases. As discussed above, however, the ALJ did not err in discounting Dr. Wheeler's opinion. And although Mr. St. Clair is correct that Dr. Robinson did not explain the basis of his opinion, the record supports the ALJ's determination that the opinion was consistent with Mr. St. Clair's treatment record, including his ability to perform tasks, unremarkable mental status examinations, and tendency to show irritation primarily when asked about substance use. *See* AR 419, 421-22, 779, 801, 805.

II. <u>The ALJ's Evaluation of Mr. St. Clair's Testimony</u>

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834.

Factors that an ALJ may consider in evaluating a claimant's symptom testimony include inconsistencies in testimony or between testimony and conduct, inconsistency with the medical evidence, daily activities, and unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). If the ALJ finds the claimant malingered, the evidence as a whole must support that finding. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003); *Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010) (affirming credibility finding based on affirmative evidence of malingering, where claimant's activities contradicted asserted limitations and claimant's statements indicated ability to work but reluctance to do so for fear of affecting benefits).

Here, the ALJ made no finding of malingering and so was required to offer clear and

convincing reasons to discount Mr. St. Clair's account of his symptoms. The ALJ did so, offering several clear and convincing reasons in support of his finding that Mr. St. Clair's statements about the severity of his symptoms are "not entirely credible." AR 460.

First, the ALJ pointed out that Mr. St. Clair's statements were inconsistent with objective medical evidence in the record. The record supports this finding. The ALJ cited and discussed mental status exams, which he noted yielded mostly unremarkable findings throughout the disability period. AR 460-69; *see* AR 329, 344-45, 378-79, 395, 404, 413, 416, 419, 421-23, 427, 429, 430. The ALJ also noted that the record contains no indication that Mr. St. Clair sought treatment after his 2012 evaluation with Dr. Wheeler. AR 469. The ALJ reasoned that this was inconsistent with Mr. St. Clair's alleged limitations because if he were as "limited as he alleges, he would pursue treatment available to him that might provide some relief of his symptoms." *Id.* An ALJ may consider failure to seek treatment as evidence against the existence of an impairment. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). And the ALJ cited further evidence that Mr. St. Clair was disinclined to work before his injury and that this continued after for reasons unrelated to his alleged disability. AR 169, 336-37, 344, 347, 374, 799.

Second, the ALJ properly relied on a Cooperative Disability Investigations Unit (CDIU) report in making his credibility finding. *See* AR 667. The Social Security Act authorizes the Commissioner "to conduct such investigations and other proceedings as the Commissioner may deem necessary or proper for the administration of" the Act. 42 U.S.C. § 1383(c)(1)(A). An ALJ can give a CDIU report "appropriate weight" "to the extent [it] provides factual rather than interpretive data, and to the extent the [ALJ] provides the claimant with an opportunity to address the report." *See Robert v. Astrue*, 688 F. Supp. 2d 29, 38 (D. Mass. 2010).

Mr. St. Clair stated at his hearing that he had reviewed the report and had the opportunity

to raise objections. AR 496. While Mr. St. Clair qualified some of the facts in the report, he did not object to its use by the ALJ. AR 496. On appeal, Mr. St. Clair offers several conclusory arguments for why the ALJ could not rely on the report: that it was "largely hearsay," that the ALJ did not provide him "with a copy of the referral form as well as copies of surveillance tapes, pictures, and field notes," that the record contained "'medical' observations" the investigator was not qualified to give, and that if the ALJ requested the investigation he should have recused himself from St. Clair's case. Dkt. 13, pp. 10-11.

Each of these arguments lacks merit. The same statute authorizing investigations by the Commissioner allows the Commissioner to receive evidence "even though inadmissible under the rules of evidence applicable to court procedure." 42 U.S.C. § 1383(c)(1)(A). As noted above, Mr. St. Clair acknowledged reviewing the report and did not object to its use at the hearing. AR 496. And Mr. St. Clair offers no authority for the proposition that an ALJ that requests and investigation must recuse herself from further proceedings in that case. Rather, the statute expressly contemplates the Commissioner both investigating and adjudicating. *See* 42 U.S.C. § 1383(c)(1)(A) ("The Commissioner of Social Security is further authorized, on the Commissioner's own motion, to hold such hearings and to conduct such investigations and other proceedings as the Commissioner may deem necessary or proper.").

The ALJ noted numerous discrepancies between the facts in the report and Mr. St. Clair's claims: that he told the investigator he stopped working at Goodwill because they did not need him, not because he did not understand the job as he had testified; that he was able to visit friends, hunt, travel, play video games, and do community service; that he flew to Phoenix with his brother and spent time with friends, in contrast to his testimony that he cannot be in public or around other people; and that he goes grocery shopping with his parents, in contrast to his

testimony that he cannot do so because of the crowds. AR 470-71, 675-76. The report thus provides substantial evidence for the ALJ's finding that Mr. St. Clair "is more capable than he alleges in his [SSI] application." *See* AR 471.

Third, although the ALJ did not make a finding of malingering, in supporting his rejection of Mr. St. Clair's testimony he pointed to affirmative evidence indicating that Mr. St. Clair malingered. The ALJ noted that Mr. St. Clair told two Goodwill employees with whom he volunteered that he desired and planned never to work again. AR 471, 677; that Mr. St. Clair showed an unwillingness to work before his injury, AR 169, 336-37, 344, 347, 374; and that, after his injury, Mr. St. Clair showed an unwillingness to work that was unrelated to the injury, AR 799.

The ALJ thus offered clear and convincing reasons for his decision to discount Mr. St. Clair's statements about his symptoms, and the record supports those reasons.[2]

III. <u>Lay Witness Testimony</u>

To the extent the ALJ discounted lay witness statements, he gave germane reasons to do so.

Ms. Deyla Schneider owns a vocational services agency, which Mr. St. Clair visited three times. AR 149. Based on these visits, Ms. Schneider wrote in an October 2011 letter that Mr. St. Clair showed increased anxiety and an inability to engage appropriately in relationships, had trouble with memory and comprehension, and had anger issues. *Id.* She opined that Mr. St. Clair was not capable of working at that time. *Id.* The ALJ accorded these opinions "little weight."[3] AR 476.

---

[2] While the ALJ also found that Mr. St. Clair's asserted limitations were inconsistent with his activities, the Court declines to reach this reason, as the ALJ's other reasons for discounting Mr. St. Clair's statements adequately support his decision.

[3] The ALJ mistakenly referred to Ms. Schneider as "Dale Schneider." *See* AR 476.

Mr. St. Clair's perfunctory argument that the ALJ's "reason is not supported by substantial evidence" is insufficiently specific to raise this issue on appeal. *See* Carmickle, 533 F.3d at 1161 n.2. In any case, the ALJ offered germane reasons to discount Ms. Schneider's opinion, and the record supports them. The ALJ found that the limitations Ms. Schneider described were inconsistent with the treatment record. AR 476; *see* AR 149. The ALJ further noted that Ms. Schneider appeared to rely on Mr. St. Clair's subjective complaints. AR 476. As discussed above, the ALJ did not err in discounting those self-reports. And the ALJ pointed out that although Ms. Schneider appeared to base her opinion in part on the fact that Mr. St. Clair's father was his caregiver, the record does not show this to be the case beyond a short period of time after Mr. St. Clair's injury. *See* AR 149.

Mr. St. Clair's parents, Sandra St. Clair and Floyd Lee St. Clair, also provided testimony. AR 43, 150, 151, 517. St. Clair's mother wrote in an unsigned, undated statement that since his injury St. Clair's attention wanders while cooking; that he seems afraid of being alone; and that he refuses to go shopping and becomes anxious in public or around groups. AR 151. St. Clair's father testified at the second ALJ hearing and also provided an undated written statement. He wrote that before St. Clair's injury he was his father's business partner in a janitorial business and specialized in floors. AR 150. He wrote that since St. Clair's injury, St. Clair's father had received payments to be his caregiver. *Id.* He also wrote that St. Clair "is like having a teenager in the house again," is afraid of being alone, and is nervous around people. *Id*. St. Clair's father testified at the first hearing about St. Clair's daily activities and education. AR 43-44. He testified that he managed his son's finances because his son's attention wanders. AR 45-46. He also stated that Mr. St. Clair tires easily and often complains of headaches. AR 47. At the second

hearing, he testified that he has to remind St. Clair to bathe and to feed his cat, that Mr. St. Clair naps every day, and that he reports constant headaches. AR 516-17.

The ALJ discounted these statements for germane reasons: The record supports the ALJ's statement that "the medical record does not show the limitations of [Mr. St. Clair's] memory or cognition" that his parents describe. AR 478; *see* AR 329, 345-346, 457-480 (mental status exams). The record also supports the ALJ's finding that Mr. St. Clair's "lack of engagement in certain tasks is volitional." AR 478; *see* AR 169, 336-37, 344, 668.

IV. The ALJ's RFC Assessment

An ALJ uses a claimant's RFC assessment is at step four of the sequential evaluation process to determine whether the claimant can do his or her past relevant work, and at step five to determine whether he or she can do other work. Social Security Ruling (SSR) 96-8p, 1996 WL 374184 *2. The RFC is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ must also discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ found Mr. St. Clair had the RFC:

**to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is capable of simple, routine, repetitive tasks consisting of 1-2 steps. He is able to interact occasionally with coworkers and supervisors but should have no public interaction.**

AR 459 (emphasis in the original).

1 | Because, as discussed above, the ALJ did not make the errors Mr. St. Clair asserts in considering the medical evidence, his testimony, or the testimony of lay witnesses, the ALJ's RFC assessment completely and accurately describes his functional limitations.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined Mr. St. Clair to be not disabled. Defendant's decision to deny benefits therefore is AFFIRMED.

Dated this 5th day of September, 2017.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge